### J. G. McGannon v. Henry Straightlege.

Indian Lands; *Statute, Inoperative Until When.* So much of § 2, chapter 79, Laws of 1874, of the "act to protect *bona fide* purchasers of Indian lands," which provides that a person purchasing land from an Indian, allotted under a treaty, cannot be evicted by any other person who has obtained the legal title to the same, until such subsequent purchaser has repaid the prior purchase-money, with interest, is inoperative, until the Indian title is extinguished, as violative of a paramount federal law.

*Error from Miami District Court.*

Ejectment, brought by *McGannon* against *Straightlege.* Judgment for defendant, at the October Term, 1885. The plaintiff brings the case to this court. The opinion states the facts.

*Brayman & Sheldon,* for plaintiff in error.

*Thos. M. Carroll,* for defendant in error.

The opinion of the court was delivered by

Horton, C. J.: This action was before this court at its July session in 1884, upon the question whether the plaintiff's title was barred by any statute of limitations. (32 Kas. 524.) It

was then held that as the land continued to be Indian land, and the title an Indian title up to the time it was conveyed by Harriet Sky, or Nah-me-co-se-quah, sole heir of Pa-kan-giah, and her husband to the plaintiff, no statute of limitations could operate against such title. Upon the new trial, judgment was rendered for the plaintiff. The defendant then made application to the court for the payment of his purchase-money and the value of his improvements upon the land before the plaintiff should be let into possession of the same, under the provisions of § 2, chapter 79, Laws of 1874, and § 601 of the civil code. The plaintiff admitted that the defendant was entitled to the value of his lasting and valuable improvements, less rents and profits, but denied that he was entitled to reimbursement for his purchase-money under "the act to protect *bona fide* purchasers of Indian lands," upon the ground that so much of said act as provides that a person purchasing land from an Indian, allotted under a treaty, cannot be evicted by any other person who has subsequently acquired title to the same, until such subsequent purchaser has repaid the purchase-money, is inoperative and void, as in violation of the act admitting the state into the union, and also of the treaty with the Kaskaskia, Peoria, Piankeshaw and Wea tribes of Indians, of May 30, 1854. The district court decided that the plaintiff should pay to the defendant his purchase-money, with interest, in addition to the value of his lasting and valuable improvements, less rents and profits, before the defendant should be required to deliver up the possession of the premises. To this ruling the plaintiff excepted.

The question for our determination is, whether the defendant can recover his purchase-money, with interest, as provided in § 2, chapter 79, Laws of 1874, before he can be required to surrender possession of the premises owned by the plaintiff. The act of admission of January 29, 1861, among other things provides:

"That nothing contained in the said constitution [of Kansas] respecting the boundary of said state shall be construed to impair the rights of person or property now pertaining to

the Indians of said territory, so long as such rights shall remain unextinguished by treaty between the United States and such Indians, or to include any territory which, by treaty with such Indian tribe, is not, without the consent of such tribe, to be included within the territorial limits or jurisdiction of any state or territory; but all such territory shall be excepted out of the boundaries, and constitute no part of the state of Kansas, until said tribe shall signify their assent to the president of the United States to be included within said state, or to affect the authority of the government of the United States to make any regulation respecting such Indians, their lands, property, or other rights, by treaty, law or otherwise, which it would have been competent to make if this act had never passed."

Section three of said treaty reads:

. . . "All selections in this article provided for shall be made in conformity with the legal subdivisions of the United States lands, and shall be reported immediately, in writing, with apt descriptions of the same, to the agent for the tribe. Patents for the lands selected by or for individuals or families may be issued, subject to such restrictions respecting leases and alienations, as the president or congress of the United States may prescribe." (10 U. S. Stat. 1082, 1083.)

The land being Indian, and the title thereto being Indian title up to the date of the conveyance to the plaintiff, in our opinion, under the foregoing provisions, the legislature has no right to impose the lien, charge or incumbrance upon the land, now asserted, and therefore the act cannot have the effect to require the plaintiff to pay to the defendant any purchase-money. To compel the plaintiff to pay such purchase-money would violate a paramount federal law. So much of said chapter 79, Laws of 1874, as requires the second purchaser, under such circumstances as appear in this case, to pay any purchase-money to the first purchaser, is wholly void. (*Vickroy v. Pratt,* 7 Kas. 238; *Lemert v. Barnes,* 18 id. 9; *Maynes v. Veale,* 20 id. 374; *Brown v. Steele,* 23 id. 672; *Wilcox v. Jackson,* 13 Pet. 517.)

*Invalid statutory provision.*

If the legislature has the power to impose a lien for two or three hundred dollars upon this land, without benefitting in any manner the purchaser, and without the consent of the United States, or of the Indian to whom it was allotted, as

the district court seems to have decided, then the legislature would have the power to prescribe under what rules and regulation Indian lands might be sold or conveyed, and would also have the absolute power to deprive the United States and the Indian, to whom the land was allotted, of all power of alienation. This, of course, the legislature could not do.

Counsel for the defendant refers to *Krause v. Means*, 12 Kas. 335, as decisive that the successful litigant must pay the defeated claimant his purchase-money. That decision, which was concurred in by only two members of this court, gave the defeated party the benefit of the occupying claimant's act. It was said: "He is within the spirit of the law which aims to secure compensation to him who, in a mistaken conviction of ownership, meliorates the land he occupies with lasting and valuable improvements." We have no inclination to criticise or question that decision so far as it is based upon the equitable doctrine that a person receiving the benefits of improvements shall make compensation therefor. Further than that we are unwilling to go.

The order of the district court, granting the application of the defendant for his purchase-money, will be reversed. The cause will be remanded for further proceedings in accordance with views herein expressed.

All the Justices concurring.